No. 30,579.

THE STATE OF KANSAS, *Appellee*, v. ARTHUR E. MERRIWEATHER, *Appellant*.

(15 P. 2d 425.)

Opinion filed November 5, 1932.

*O. O. Osborn,* of Stockton, and *W. L. Sayers,* of Hill City, for the appellant.

*Roland Boynton,* attorney-general, *Everett E. Steerman,* assistant attorney-general, *F. E. Young, D. A. Hindman,* both of Stockton, and *H. McCaslin,* of Osborne, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant was charged with murder in the first degree for the killing of William Francis, and was convicted of manslaughter in the first degree. Defendant appeals.

Defendant and his father raised watermelons for market. Somebody was stealing melons. On the night of August 28, 1931, melons were stolen, and melons not taken were cut up and destroyed. On the next night defendant stationed himself in a lane by a cornfield near the melon patch. He had with him a 12-gauge Winchester pump shotgun, containing six shells loaded with No. 6 shot. A little before nine o'clock defendant heard persons in the cornfield. They were William Francis, Jack Screen and Leland McCall, who were approaching the melon patch from the cornfield, intending to steal melons. Defendant stepped inside the cornfield, and moved toward the melon patch. In an affidavit made subsequent to the homicide and delivered to the county attorney, defendant said there were

three persons, and he fired three shots. He killed Francis, killed Screen, and wounded McCall. Francis was shot in the posterior upper part of his shoulder and neck. Screen was shot in the center of his back and about the hips and small of the back. McCall was shot in the ankle.

The affidavit referred to was introduced in evidence by the state. It contained defendant's account of the shooting, the substance of which is incorporated in the foregoing narrative. The affidavit concluded in part as follows:

"After I fired the last shot, I heard a man yell. It sounded to me like all the men fell. I started at once for the house, about forty rods from the place I did the shooting. Soon after I started I heard some one groaning and calling for help. When I heard the groaning and calling for help I did not stop, but went on to the house, and there told my father that I thought I had shot some one. We, that is father and I, were going to go down to the place where I thought the man was who might be hurt. Then I mentioned to my father that we had better call the sheriff. I then called the sheriff. . . . I had no knowledge of who the people were, but supposed they had come to get melons. I had no intention of hurting any one, only intending to give them a scare. . . . My reason for going down to the patch with the gun was to scare the parties away if they should come. . . . I simply wanted to protect mine and my father's property."

Defendant did not testify at the trial, the admissions contained in the affidavit prejudicial to the defense were not explained or denied, and the court properly instructed the jury that admissions against interest were to be taken as true, and admissions in defendant's own interest were to be considered and weighed as other evidence in the case.

As indicated, the jury found defendant guilty of manslaughter in the first degree, instead of guilty of murder in the first degree. The conviction necessarily rested on an instruction given pursuant to R. S. 21-407, applicable if the jury should find defendant was engaged in the perpetration of, or an attempt to perpetrate, a crime or misdemeanor not amounting to a felony. Defendant complains because manslaughter in the first degree was thus submitted to the jury. The evidence was susceptible of an interpretation warranting the instruction. It was not necessary that the "crime or misdemeanor not amounting to a felony" should be independent of and separate from the homicide, and defendant would have had good ground to complain if the instruction had not been given. (*State v. Spendlove,* 47 Kan. 160, 28 Pac. 994; *State v. Bassnett,*

80 Kan. 392, 102 Pac. 461.) In case of murder in the first degree, committed in perpetration of or attempt to perpetrate "arson, rape, robbery, burglary, or other felony" (R. S. 21-401), the elements constituting the "other felony" must be distinct from the homicide itself, the same as when arson, rape, robbery or burglary is involved. (*State v. Fisher*, 120 Kan. 226, 243 Pac. 291.)

Before sentence the state produced evidence that defendant had previously been convicted of felony in the district court of Jefferson county, Nebraska, and the term of defendant's imprisonment was doubled pursuant to R. S. 1931 Supp. 21-107a. Certified copies of the proceedings were introduced in evidence. The copies were not authenticated in accordance with the act of congress, nor in accordance with R. S. 60-2853, and it is contended there was no competent evidence to prove previous conviction.

The statutes relating to authentication of copies of records and proceedings of foreign courts were not designed to supersede other methods of proof. The subject is discussed by Wigmore as follows:

"The whole purpose of the process of authentication by presumed genuineness, judicial notice, and certificates of authority, is to avoid the inconvenience and expense of calling witnesses in the ordinary way to prove that which is seldom fairly disputable. The formalities so available by the common law or by statute are thus clearly not prescribed for their own sake, as being a necessary accompaniment of the process of authentication, but merely as substitutes for a more tedious and undesirable method. If, then, a party wished to resort to the more cumbrous method which would otherwise be necessary, the law will interpose no obstacle. It has merely endeavored to facilitate his proof; if he chooses to repudiate this assistance and proceed by the other method, he is at liberty to do so. It follows that if he attempts to avail himself of the more convenient method specially furnished, and fails to employ it properly, he may then nevertheless fall back upon the more cumbrous method which would have been open to him in the beginning had he chosen. In other words, he may *supply by other testimony the defects of a certificate of authentication.*" (3 Wigmore on Evidence, § 1679, p. 565.)

In this instance the person who was county attorney when defendant was tried and convicted in Nebraska, and who has ever since been such officer, was a witness for the state. He drew the information. He conducted the prosecution. He handled and filed all papers. He was familiar with all the records in the case. He knew the clerk of the district court, and he had her certify in his presence copies of the proceedings of record. These copies he brought with him, and in connection with his testimony the copies were intro-

duced in evidence. Even if it should be said the proof of former conviction was technically deficient in some particulars, the court holds the method of proof was proper, and the proof itself was sufficient. Of course there is no contention defendant was not previously convicted.

Defendant makes numerous other objections to the proceedings. They have been considered, and the court does not regard them as possessing substantial merit.

The judgment of the district court is affirmed.